IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 29, 2015 Session

## IN RE: C.A.F., ET AL.

**Appeal from the Juvenile Court for Johnson County**
**Nos. 14JV38, 14JV39      William B. Hawkins, Judge**

_____

**No. E2014-02482-COA-R3-PT – Filed July 29, 2015**

_____

The Department of Children's Services ("DCS") and the Guardian ad Litem both filed petitions in the Juvenile Court for Johnson County ("the Juvenile Court") seeking to terminate the parental rights of D.A.F. ("Father") and J.D.F. ("Mother") to four of their minor children: C.A.F., born 08/06; J.A.F., born 01/08; C.R.F., born 01/09; and, S.R.F., born 09/11 ("the Children," collectively). The ground alleged was severe child abuse, of a sexual nature. After a trial, the Juvenile Court found that clear and convincing evidence established the ground of severe child abuse and that termination of Mother's and Father's parental rights was in the Children's best interest. Mother and Father appeal the termination of their parental rights, arguing, in part, that the ground of severe abuse must be overturned because no medical exam was conducted on the Children. We affirm the judgment of the Juvenile Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Perry L. Stout, Mountain City, Tennessee, for the appellants, D.A.F. and J.D.F.

Herbert H. Slatery, III, Attorney General and Reporter, and, Mary Byrd Ferrara, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

Kristi J. Murray, Guardian ad Litem.

# OPINION

## Background

In October 2012, a DCS case manager visited the home of Mother and Father. The children in the household were found suffering from numerous ailments, including severe flea bites, lice, and decayed, black, broken and abscessed teeth. Mother and Father tested positive for methamphetamines and other drugs. The Children were taken into custody, and Mother and Father stipulated to the Children's dependency and neglect. A permanency plan was entered for Mother and Father. Meanwhile, the Children came to live with a foster family.

In February 2013, the foster mother reported that C.R.F. was acting out in a sexual manner. In November 2013, Julie Price ("Price"), Clinical Director of Children's Advocacy of Sullivan County, began play therapy with C.R.F. C.R.F. disclosed that Mother and Father had touched her private parts and made her touch others. In particular, C.R.F. stated that she was made to rub lotion on the private parts of a man named "Jap." C.R.F. stated that she knew all about sex because Mother and Father had taught her. In March 2014, Price conducted extended assessments with C.A.F. and J.A.F. In the course of these sessions, the brothers described sexual abuse at the hands of Mother, Father, and "Jap." C.A.F., then age seven, identified where his parents touched him on an anatomical diagram, marking X's on the penis and anus areas. C.A.F. also stated that he and his brother J.A.F. would put their mouths on each other's private parts because their parents had done this to them. In May 2014, both DCS and the Guardian ad Litem filed petitions seeking termination of Mother's and Father's parental rights on the ground of severe child abuse. In July 2014, C.A.F., J.A.F., and C.R.F. participated in forensic interviews where they again disclosed abuse at the hands of Mother and Father.

This case was tried in September 2014. At trial, Mother and Father strongly denied ever having abused the Children. The Children's disclosures were entered into evidence. Price testified as an expert concerning the disclosures. Regarding the Children's current status, they are all living together in a foster home. The testimony was that the foster home has no criminal activity, no sexual abuse, truancy or domestic disputes, and that the Children are having their medical needs addressed.

In October 2014, the Juvenile Court entered its order terminating Mother's and Father's parental rights to the Children. The Juvenile Court found that the ground of severe child abuse had been proven by clear and convincing evidence against Mother and Father and that the evidence was clear and convincing that termination of Mother's and Father's parental rights was in the Children's best interest. We quote from the Juvenile Court's detailed order regarding the ground for termination:

The Court finds by clear and convincing evidence pursuant to the severe abuse provisions of T.C.A. 36-1-113(g)(4), and T.C.A. 37-1-102(21) that these children have made multiple disclosures of sexual abuse perpetrated on them by the Respondent parents. These disclosures were made to several individuals, including Julie Price, Clinical Director of the Children's Advocacy Center. These disclosures were made by the three older children, [C.A.F.], [J.A.F.] and [C.R.F.] during the course of their extended assessment with Ms. Price. The court finds that the children made disclosures to Ms. Price including, but not limited to, the following:

That the child [C.A.F.] revealed to Ms. Price that he was touched by his parents on his private parts, and that his clothes were off. When asked how many times this had happened he disclosed that it happened "a lot of times, a whole double lot of times. That he drew an "X" on an anatomical drawing on the parts of his body where he had been touched by his parents and he drew an "X" over the genital area and the posterior or buttocks. That this child disclosed that the behavior had happened a lot and that it happened in Mom and Dad's room. That he and his brother [J.A.F.] would get under a blanket and put their mouths on each other's private parts and that Mom and Dad did it to them so they thought it was okay.

That the child [J.A.F.] disclosed to Ms. Price that his younger sister [C.R.F.] had put something in the nature of a cream on the private areas of a person identified as a man named Jap. That Mom and Dad were there and he got mad at [C.R.F.] for rubbing on Jap. He disclosed that Mom and Dad touched his private parts. That Jap would touch their private parts. That he drew an "X" on an anatomical drawing over the parts of his body where he had been touched by the Respondents and he drew an "X" over the genital area and the buttocks area. He also disclosed that "Big Sissy", allegedly an older sister, also touched his private parts as well.

That the child [C.R.F.] disclosed to Ms. Price that her Dad had touched her private parts. That he had touched her private parts while her Mom watched. That Jap made her rub cream on his private parts. That her parents had no clothes on when she did this. She disclosed that her Dad had touched her privates and described her Dad poking her vagina with a finger. That when given a piece of paper and a pencil she stabbed the paper to demonstrate how she had been poked and that being poked by her Dad made her bleed. That her Mom and Dad laughed at her when they touched her or when they made her touch others. That her Mom and Dad had been

-3-

naked and jumped up and down on her like a trampoline. That she knew all about sex because her Mom and Dad taught her.

The Court finds that Ms. Julie Price, Clinical Director of the Children's Advocacy Center is an expert witness in her field. That she has a masters degree and has interviewed and or counseled with approximately seven hundred children alleged to be victims of abuse and neglect. Further, that she is not an employee of the Department of Children's Services. The Court finds that she does not use leading questions when interviewing children who are alleged to be victims of abuse or neglect. That she looked for signs of coaching during the extended assessment process and it was her opinion that the children had not been coached to say they were abused. That it was her opinion that the children had been sexually abused by the parents. The Court finds that Ms. Price interviewed these children separately. That the children were acting out sexually and with each other and had knowledge of sexual matters far beyond what is appropriate for children of this age. That the child [C.R.F.] had been humping a couch was an example of sexually acting out. That [C.R.F.] had gotten in trouble for inappropriately touching her younger sister. That the children had demonstrated behaviors during their interviews which corroborated and or lent credibility to their disclosures and which further demonstrated they were being truthful as to their disclosures.

The Court has carefully considered the testimony of the witnesses and the parties, the exhibits introduced into the record and the record as a whole and does find by clear and convincing evidence that these children are victims of severe abuse under T.C.A. 36-1-113(g)(4) and 37-1-102(21). The Court finds that these children have been sexually abused and molested by the Respondent parents. The Court finds that the Respondent Parents have perpetrated aggravated rape against the children per T.C.A. 39-13-502 through 504; and specifically 39-13-502 aggravated rape, subsections 2 and 3; T.C.A. 39-13-503, rape; T.C.A. 39-13-504 aggravated sexual battery and 522 rape of a child; T.C.A. 39-15-301, incest; T.C.A. 39-15-402 Haleys Law; and T.C.A. 39-17-1005, aggravated sexual exploitation of a minor. The Court finds that the State of Tennessee Department of Children's Services and the Guardian ad Litem have proven their petitions by clear and convincing evidence and the Court does further find these children to be victims of severe abuse at the hands of the Respondent parents. This severe abuse by the Respondents provides the Court with each and every element needed to terminate all of the Respondents parental rights on the grounds of severe abuse.

We next quote from the Juvenile Court's order regarding best interest:

The Court has carefully considered the statutory best interest factors and finds clear and convincing proof that they weigh overwhelmingly in favor of terminating the parent rights of the Respondents. It is clear from the proof that the Respondents have not made changes in their conduct or circumstances that would make it safe for the children to go home. The proof before the Court shows that the Respondents have failed to demonstrate that they can provide for the children's physical, emotional and developmental needs. The Court finds that all of the needs of the children have been met in the foster home. The children have been in the same foster home for two years. The foster parents love the children. The children love the foster parents. The Court finds that there is no crime in the foster home nor any drug or alcohol abuse. The children have received excellent grades from school while in the foster home. The children are happy and healthy in the foster home. The Court finds that the foster home intends to adopt the children if they are able.

The Court finds from the proof that the Respondent parents tested positive for multiple drugs over the custody episode. That the Respondents had engaged in domestic violence with each other. That the children had been sexually abused and molested while in the care of the Respondent parents.

The proof before the Court shows that the Respondents have failed to make lasting changes in their lifestyle or conduct so that lasting change is not possible. There has been ongoing sexual abuse of the children in the home of the Respondents.

The proof is clear that removing the children from the foster home would be contrary to the children's best interests and detrimental to their well-being. The Court finds that the Department of Children's Services has made reasonable efforts to provide services; however, reunification is not realistic or in the best interests of the child. Therefore, the Court, having carefully considered the best interests of the chil[d]ren finds by clear and convincing evidence that it is in the best interests of the children for all the parental rights of Respondents be terminated and the children be freed for adoption.

Mother and Father filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Mother and Father raise one issue on appeal: whether the Juvenile Court erred in terminating their parental rights to the Children on the ground of severe child abuse.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a

parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Juvenile Court erred in finding and holding that the ground of severe child abuse was proven by clear and convincing evidence. In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

(4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4) (2014). In pertinent part, Tenn. Code Ann. § 37-1-102 provides:

(21) "Severe child abuse" means:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).

(B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe

developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or

(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102 (b)(21) (2014).

On appeal, Mother and Father make three primary arguments against the finding of severe child abuse: 1) that no physical examination was conducted on the Children to confirm any sexual abuse; 2) that Mother and Father are raising a young child born after the removal of the Children and that no issues have yet been raised regarding their parenting of that child; and, 3) that no criminal charges have been filed against Mother and Father in relation to their alleged sexual abuse of the Children.

With respect to the lack of a medical examination, Mother and Father fail to cite any law stating that the ground of severe child sexual abuse must be established by a medical examination of the alleged victims. In this case, independent forensic interviews were conducted with C.A.F., C.R.F., and J.A.F. The forensic interviewer did not testify. However, the reports of each interview by the forensic interviewer were properly introduced into evidence by Father's attorney[1] and used by him in cross-examination. Mother and Father could have called the forensic interviewer to testify regarding the appropriateness of a medical examination for the Children. They chose not to do so. We decline to hold that the lack of a medical examination somehow prevented the Juvenile Court from finding clear and convincing evidence as to the ground of severe child sexual abuse.

Mother and Father are raising a child born after removal of the Children. The status of this child apparently is not under legal dispute at this time, and, according to Mother and Father, this suggests that that removal of the Children is unjustified. This Court previously has addressed this scenario:

---

[1] Mother and Father were represented by separate counsel at trial. On appeal, Mother and Father are represented by the same attorney, Father's attorney at trial.

We find this line of reasoning unpersuasive because the conditions of the two sets of children are not necessarily the same. The fact that the six children were removed from the home does not mean that the three remaining children should be removed. Similarly, the fact that three children remain in the home is not evidence that the other children should be returned. Each situation is independent of the other and should be judged as such.

*In re: C.D.B.*, 37 S.W.3d 925, 928-29 (Tenn. Ct. App. 2000) (quoting *In re Baker*, No. W1998-00606-COA-R3-CV, 1999 WL 1336044, at *4 (Tenn. Ct. App. Dec. 28, 1999), *no appl. perm. appeal filed*).

In other words, the fact that Mother and Father are currently raising a child without any known problem does not detract from the legal case for terminating their parental rights to the Children. These are, obviously, separate situations.

Finally, Mother and Father point to the fact that they never have been charged criminally in relation to the allegations that they sexually abused the Children. According to Mother's and Father's reasoning, if even probable cause has not been found, how then can clear and convincing evidence be found? Of course, this is not the whole picture. To ultimately obtain a conviction in a criminal case the state would have to prove the charges beyond a reasonable doubt. In a termination of parental rights case, the standard is clear and convincing evidence, a high standard but not as exacting as beyond a reasonable doubt. The evidence presented in this case is what must be considered in determining whether there is clear and convincing evidence in this record as to both grounds and best interest. We decline to hold that the absence of criminal charges relating to sexual abuse somehow undermines the evidence presented against them in this civil case.

Beyond these arguments, Mother and Father offer little against the substance of the allegations themselves. Mother and Father decry what they term "inconsistent" and "outrageous" statements from the Children. Mother and Father also allege that the Children were coached by the foster mother. We have carefully reviewed the testimony, the disclosures made by the Children, and the interviews conducted with the Children. We find, as did the Juvenile Court, the suggestion of "coaching" to be unsupported by the record. In addition, we find, again as did the Juvenile Court, that the Children's disclosures are, in fact, consistent with sexual abuse. The evidence contained in the record does not preponderate against any of the Juvenile Court's findings relative to the ground of severe child abuse. We find and hold that the Juvenile Court did not err

when it found that clear and convincing evidence establishes the ground of severe child abuse.

Although Mother and Father do not specifically raise best interest as an issue on appeal, we will consider this element of the Juvenile Court's judgment. We look to several statutory factors in determining whether termination of parental rights is in the child's best interest:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2014).

The Juvenile Court made detailed findings, quoted above, as to best interest. The evidence does not preponderate against these findings. Mother and Father point to their substantial compliance with the permanency plan. Indeed, the record arguably supports a finding that the parents complied substantially with their permanency plan. However, not all best interest factors are inherently equal. This is not a case where the central issue is whether the parents obtained automobile insurance or a driver's license so they can drive to work. This case is about sexual abuse. The parents have made absolutely no genuine reckoning with the sexual abuse allegations, which we, like the Juvenile Court, have found to be proven by clear and convincing evidence. Therefore, it would be entirely detrimental to the Children's best interest to place them back in an environment where sexual abuse remains an ongoing threat. In the meantime, the Children are developing well with their foster family.

We find and hold, as did the Juvenile Court, that the evidence is clear and convincing that it is in the Children's best interest for Mother's and Father's parental rights to be terminated. We affirm the judgment of the Juvenile Court terminating Mother's and Father's parental rights to the Children.

### Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellants, D.A.F and J.D.F, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE